O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiff:          Attorneys **NOT** Present for Defendants:

**Proceedings:**          IN CHAMBERS (No Proceedings Held)

## I.    INTRODUCTION

This case involves alleged omissions in offering documents in a collateralized bond investment.  Michael Sitrick, as a trustee for the Michael and Nancy Sitrick Trust (hereinafter "Sitrick" or "Plaintiff"), filed his complaint in Los Angeles County Superior Court on April 6, 2005, against Citigroup Global Markets, Inc., as successor to Salomon Smith Barney, Inc., (hereinafter "Citigroup" or "Defendant"), for its role as a placement agent in the sale of notes by Financial Management Advisors ("FMA").  The notes were issued by FMA CBO Funding III, Ltd. ("CBO III"),[1] a newly formed corporation with limited liability under the laws of the Cayman Islands.

## II.    BACKGROUND

In his complaint, Plaintiff alleges that Defendant fraudulently omitted material information in the Supplemental Information Memorandum ("SIM") and Offering Circular ("OC") for the notes issued by CBO III.  Plaintiff alleges five causes of action: (1) fraudulent omission, (2) negligent misrepresentation, (3) securities fraud pursuant to California Corporations Code §§ 25400 and 25401, (4) rescission, and (5) breach of fiduciary duty.   Plaintiff seeks more than $2.5 million in compensatory damages, plus interest, and punitive damages.

---

[1]          CBO stands for collateralized bond obligation.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

This action is Plaintiff's third suit of a similar nature.[2]  In December 2002, Plaintiff and other family members sued Kenneth D. Malamed ("Malamed") and FMA for their role in the failed investments in the CBO III and other CBO offerings.  *See Sitrick v. Malamed,* Case No. BC286553, Los Angeles County Superior Court (Dec. 6, 2002) (hereinafter "the State Court Action").  He alleged that Defendants "acted contrary to law in (i) falsely representing the risk inherent in a complex and highly specialized form of investment instruments known as 'collateralized bond obligations' ... in order to induce Michael and Nancy Sitrick, and the Sitrick Trust, to place monies in such instruments; ..." (Complaint for the State Court Action ¶ 12.)  Plaintiff further alleged that Sitrick had no knowledge of "this type of investment vehicle" but that Malamed stated that the CBOs were "'as close as you can get to being risk free.'"  (*Id.* ¶¶ 16, 17.)  Based on this representation, Sitrick alleged that he "invested, on behalf of the Sitrick Trust, substantial sums in *three CBOs* established and recommended by Mr. Malamed over the course of the ensuing year and a half."  (*Id.* ¶ 18, emphasis added.)   Plaintiff charged Defendants with: breach of fiduciary duty, fraudulent concealment, negligent misrepresentation, rescission, and violations of California Corporations Code §§ 25401 and 25501. Malamed and FMA tendered this claim to their insurer, American International Specialty Lines Insurance Company ("AISLIC").  After agreeing to assume the defense, AISLIC reached a settlement agreement with Plaintiff and his other family members in May 2004, exhausting the $2 million coverage limitation.  *See Fin. Mgmt. Advisors LLC v. Am. Int'l Lines Speciality Ins. Co.*, No. 06-5501, slip op. (9th Cir. Nov. 5, 2007).

Approximately ten months later, Plaintiff filed another action against Wachovia Securities Financial Network, Inc., for its role as a placement agent in the FMA CBO Funding II in Los Angeles County Superior Court.  The action was removed to the Central District of California on April 22, 2005.  *See Sitrick v. Wachovia Secs. Fin. Network, Inc*., No. CV 05-2962-SVW (CTx) (April 22, 2005)  ("the CBO II Litigation"). In the CBO II transaction, Plaintiff invested in the most subordinate tranche of the notes and later alleged that he suffered a material loss of his investment, similar to CBO III.  He charged the CBO II defendants with almost the same causes of action as here: fraudulent

---

[2]        The Court grants Defendant's request for judicial notice of the other cases and certain relevant orders in them.  *See* accompanying order addressing Defendant's requests for judicial notice and both parties' evidentiary objections.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

omission, negligent misrepresentation, securities fraud pursuant to California Corporations Code §§ 25400, 25401, 25501, 25504, rescission and breach of fiduciary duty.[3]  Judge Stephen Wilson granted Defendant's motion to dismiss or, in the alternative, summary judgment on August 25, 2005.  Judge Wilson's order was affirmed by the Ninth Circuit Court of Appeals.  *Sitrick v. Wachovia Secs. Fin. Network*, No. 05-56475, slip op. (9th Cir. Sept. 6, 2007).[4]

Defendant removed the current case to this court on the basis of diversity jurisdiction on May 19, 2005, and the case was assigned to Judge George P. Schiavelli.  Defendant filed a motion to dismiss or, in the alternative, a motion for summary judgment.  Judge Schiavelli denied the motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure but granted Defendant's request to convert the matter into a motion for summary judgment ("MSJ") pursuant to Rule 56.[5]   The parties were allowed limited discovery and later filed supplemental briefs.

On October 8, 2008, the case was transferred to this Court.   Defendant contends summary judgment should be granted for several reasons:  The information at issue is immaterial and, therefore, it had no duty to disclose the information at issue; the statute of limitations bars Plaintiff's causes of action; and  Plaintiff did not rely on the OC to make his investment.

After reviewing the filings and hearing argument, the Court GRANTS Defendant's

---

[3]     Plaintiff alleged that the placement agents for CBO II fraudulently omitted two statements that closely parallel the statements as charged in this action (i.e, (1) that the Class E Notes would become worthless if the underlying portfolio of high-yield securities which secured the notes suffered realized losses of but a fractional percentage of its underlying bond portfolio; and (2) that the Class E Notes would become worthless if the pattern of default rates which occurred in the high-yield securities market from 1989 through 1992 recurred starting in the year following the sale of the notes).

[4]     In certain sections of this order the Court quotes from Judge Wilson's order and numerous other passages in this order were substantially "borrowed" from his order without precise citation.

[5]     Unless otherwise stated, all rules referenced herein will refer to the Federal Rules of Civil Procedure.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

MSJ for the following reasons. First, under California's securities laws Defendant did not have a duty to disclose the alleged omitted statements as a matter of law. Second, the statute of limitations bars Plaintiff from alleging the state securities or negligent misrepresentation causes of action. Third, Plaintiff failed to show and cannot show that he reasonably relied on the offering documents, and thus he cannot prove common-law fraud. Fourth, because there is no genuine issue of fact as to fraud and negligent misrepresentation, Plaintiff also cannot proceed on his rescission and breach of fiduciary duty causes, as a matter of law.

## III.  MOTION FOR SUMMARY JUDGMENT

### A.  Legal Standard

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248. The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal quotations omitted). "In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.* In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325. Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt. Sys.*

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

*Corp.*, 526 U.S. 795, 805-06 (1999) (citing *Celotex*, 477 U.S. at 322) (alterations in original).

When the moving party meets its burden, the "opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Summary judgment will be entered against the opposing party if that party does not present such specific facts. Fed. R. Civ. P. 56(e)(1). Only admissible evidence may be considered in deciding a motion for summary judgment. *Id.*; *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## B.    Analysis

Attached hereto as Exhibit A is a chronology that summarizes the key events and developments referred to in this order. Plaintiff claims that Defendant Citigroup, as the successor to Salomon Smith Barney, Inc., fraudulently omitted material information from the SIM, circulated in May 2000, and the OC, circulated in October 2000, for the sale of securities issued by CBO III. CBO III issued two tranches of notes: Class A Floating Rate Senior Notes ("Class A Senior Notes") and Class B Income Notes ("Class B Income Notes"). Plaintiff claims he tendered a total of $5 million before the close of the note funding in October 2000. (*See* Sitrick Aug. 15, 2005 Decl. ¶ 4.) Defendant has not disputed this amount.[6]

---

[6]    According to the July 14, 2000 subscription and escrow agreement, however, Plaintiff invested only $3.5 million in the Class B Income Notes.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

In the SIM and the OC (collectively the "Offering Documents"), Citigroup allegedly "failed to disclose the most prominent risk inherent in CBO III: investors in Class B Income Notes would lose a material portion of their investment, with no likely chance of recovery, if CBO III suffered realized losses of but a small percentage of its underlying bond portfolio." (Compl. ¶ 12.) Additionally, Citigroup allegedly failed to disclose that such losses could be triggered if the historical pattern of default rates (or the record depicting the dates when those who were obliged to pay the underlying debt failed to pay) repeated itself following the close of CBO III. (Compl. ¶ 28.)

In his complaint, Sitrick claims he was induced to invest $5 million in the CBO III's Class B Income Notes without knowledge of this alleged "material" information. This investment was part of the approximately $32 million in Class B Income Notes and $243 million total investment raised by CBO III in or around October 2000. In 2001 and 2002, the pattern of historical default rates allegedly did repeat itself. Thereafter, CBO III realized losses of $8 million in 2001 and $21 million in 2002. In turn, these losses caused Plaintiff Sitrick to lose more than $2.5 million of his investment in CBO III's Class B Income Notes. (Compl. ¶¶ 35, 43, 47.)[7]

Defendant argues that the Court should grant summary judgment for several reasons. First, Defendant contends that it fully disclosed the material risks of the security offerings, which defeats at least one element of all of Plaintiff's causes of action. Specifically, Defendant argues there was no disclosure duty as to the alleged omitted information because (1) the omissions were not material because one statement was a "forecast" and the other was a known condition of the past; (2) the "Bespeaks Caution" doctrine protects Defendant; and (3) Plaintiff was an accredited investor (i.e., a sophisticated or resourceful investor who has the wherewithal to invest and is knowledgeable about the market and security he invests in).[8] Second, Defendant

---

[7]     In his opposition to the MSJ, Plaintiff contends that, according to disclosures made in April 2006, investors in the Class B Income Notes lost all of their principal invested in CBO III. He states this loss is $5 million, rather than in excess of $2.5 million as he previously stated in his complaint. (Pl.'s April 28, 2006 Opp'n to Def.'s MSJ 2:20-25.)

[8]     Specifically, in relevant part Rule 501(a) of Securities and Exchange Commission Regulation D, promulgated under the 1933 Securities Act, states that an: accredited investor shall mean any person who comes within any of the following categories, or who the issuer reasonably believes

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

contends that the statute of limitations bars all of Plaintiff's causes of action.  Finally, Defendant argues that Plaintiff did not rely on the Offering Circular to make his investment, precluding him from proving yet another element of his causes of action.[9]

### 1.    **Materiality of Omitted Information**

Plaintiff claims the following information was material to his decision to invest in the Class B Income Notes, but was omitted:

- "[I]nvestors in Class B Income Notes would lose a material portion of their investment, with no likely chance of recovery, if CBO III suffered realized losses of but a small percentage of its underlying bond portfolio." (Complaint ¶ 12, hereinafter "Percentage of Default Rate Statement".)

- Such losses could be triggered if the historical pattern of default rates repeated itself following the close of CBO III.  (Complaint ¶ 28, hereinafter "Historical Default Rate Pattern Statement".)

//

comes within any of the following categories, at the time of the sale of the securities to that person: ...

(5)     Any natural person whose individual net worth, or joint net worth with that person's spouse, at the time of his purchase exceeds $1,000,000;

(6)     Any natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year;

(7)     Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person . . . and

(8)     Any entity in which all of the equity owners are accredited investors.

[9]     These arguments are set forth in Defendant's July 25, 2005 Motion to Dismiss or, in the alternative, Motion for Summary Judgment and its March 31, 2006 Supplemental MSJ.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

Plaintiff must prove that both these alleged omissions were material in all of his causes of action: (1) fraud;[10] (2) negligent misrepresentation;[11] (3) California Corporations Code, §§ 25400[12] and 25401;[13] (4) rescission[14] and (5) breach of fiduciary duty.[15]   As the

---

[10]     The elements of fraud under California law are: (1) misrepresentation (false representation concealment, or non-disclosure) of a *material* fact; (2) knowledge of falsity (scienter); (3) intent to deceive (i.e., to induce reliance); (4) justifiable reliance on the misrepresentation; and (5) resulting damages. *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith,* 68 Cal. App. 4th 445, 481 (1998).

[11]     Under California law, the elements for negligent misrepresentation are: (1) the defendant made a representation as to a past or existing *material* fact; (2) the representation must have been untrue; (3)  the defendant, regardless of his actual belief, must have made the representation without any reasonable ground for believing it to be true; (4) the representation must have been made with the intent to induce plaintiff to rely upon it; (5) the plaintiff must have been unaware of the falsity of the representation and acted in reliance upon the truth of the representation, justified in relying upon the representation; and (6) as a result of his reliance upon the truth of the representation, the plaintiff must have sustained damage. *See Cont'l Airlines, Inc. v. McDonnell Douglas Corp.*, 216 Cal. App. 3d 388, 402 (1989) (citing *Walters v. Marler*, 83 Cal. App. 3d 1, 17 (1978)) (emphasis added and internal citations omitted).

[12]     In relevant part, section 25400  provides:
>          It is unlawful for any person, directly or indirectly, in this state: ...
>              If such person is a broker-dealer or other person selling or offering for sale or purchasing or offering to purchase the security, to make, for the purpose of inducing the purchase or sale of such security by others, any statement which was, at the time and in the light of the circumstances under which it was made, false or misleading with respect to any *material* fact, or which omitted to state any *material* fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and which he knew or had reasonable ground to believe was so false or misleading.

Cal. Corp. Code § 25400 (d) (emphasis added).

[13]     Specifically, section 25401 states that:
>          It is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a *material* fact or omits to state a *material* fact necessary in order to make the statements made, in the light of the circumstances

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

analysis below shows, the Court finds that Plaintiff has failed to show a genuine issue of materiality as to the securities causes of action.

Ordinarily, the issue of materiality is a mixed question of law and fact involving the application of a legal standard to a particular set of facts. *Ins. Underwriters Clearing House v. Natomas Co.*, 184 Cal. App. 3d 1520, 1526 (1986). "However, if reasonable minds cannot differ on the issue of materiality, the issue may be resolved as a matter of law." *Id*. at 1527  (citing *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976)). In securities offerings, an "omitted fact is material if there is a substantial likelihood that a reasonable [investor] would consider it important in deciding how to [act]." *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988) (applying the materiality test for securities laws set forth in *TSC Industries* to preliminary merger discussions) (internal quotations omitted, alterations added).[16]  Put another way, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Id*. at 231-232 (internal quotations omitted).  "The district court should not take the case from the jury 'unless the court has engaged in meticulous and well articulated analysis of each item of withheld or misrepresented information,'" and unless reasonable minds could not differ

---

under which they were made, not misleading.

Cal. Corp. Code § 25401 (emphasis added).

[14]     Rescission based on fraud requires the same elements of fraud except that damages are not required to be proven. *See Reed v. King*, 145 Cal. App. 3d 261, 264 & n.1 (1983).

[15]     The elements for breach of fiduciary duty are: (1) the existence of a fiduciary relationship, (2) the breach of the fiduciary duty, and (3) damage proximately caused by that breach. *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 483 (1998). "Because Plaintiff will not be able to demonstrate causation absent materiality, materiality is also essential to Plaintiff's breach of fiduciary duty claim."  (Order Granting Defendant's Motion to Dismiss, *Sitrick v. Wachovia Secs. Fin. Network, Inc.,* No. CV 05-2962-SVW (CTx) at p. 41, n. 14 (Aug. 25, 2005) (i.e., the CBO II Litigation).)

[16]     Although Plaintiff's causes of action arise under state law, the California test for materiality applying to securities fraud is the same as under federal securities laws. *E.g., Natomas Co.*, 184 Cal. App. 3d at 1526.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

on the determination of the materiality of the withheld information.  *Caravan Mobile Home Sales, Inc., v. Lehman Bros. Kuhn Loeb, Inc.*, 769 F.2d 561, 565 (9th Cir. 1985).

In applying this test to the securities law causes of action, the Court finds that Defendant did not have a duty to disclose the soft quantitative information Plaintiff argues should have been set forth in  the "Percentage of Default Rate Statement." In addition, the Court also finds that the "Bespeaks Caution" doctrine protects Defendant from securities fraud on the Percentage of Default Rate Statement.  Nor did Defendant have a duty to disclose the information that Plaintiff argues should have been disclosed in the "Historical Default Rate Pattern Statement," because it was a known market condition.   The Court analyzes each statement in turn.

### a.  Percentage of Default Rate Statement

Plaintiff claims that the "offering documents," specifically the SIM, failed to include the potential annual default rate at which an investor would lose all of his principal.  Specifically, Plaintiff contends that the SIM included calculated models that showed "the constant annual default rate of Collateral at which investors in the Notes would recover their entire principal invested but would not profit over the life of the CBO III (i.e., 'break even')" was between 4% to 5%.  (Pl.'s April 28, 2006 Opp'n to Def.'s MSJ 4:10-14.)  Thus, according to the SIM, an investor would break even if the default rate of the underlying collateral bonds totaled 4% to 5% annually.  Despite this detailed information, Defendant failed to include in this chart or the Offering Circular the percentage of default at which an investor would lose his entire principal investment.  Plaintiff contends that, before closing, Defendant knew – but failed to disclose – that if the annual default rate were to grow to 8% to 9%, investors in the Class B Income Notes "*would lose the entirety of the principal they invested* within only a few years." (*Id.* 4:16-22.)  (emphasis in original).  The failure to disclose this information was material, according to Plaintiff.

In rebuttal, Defendant maintains that this calculation of risk was a "forecast." (Def.'s Supplemental Brief in Support of MSJ 10:18-14:26.)  To support this argument, Defendant cites *Rosenbaum v. Syntex Corp.* (*In re Syntex Corp. Secs. Litig.*), 95 F.3d 922, 926-34 (9th Cir. 1996) (analyzing when a forecast of future profits is inactionable); *Levit*

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

*v. Lyondell Petrochemical Co.* (*In re Lyondell Petrochemical Co. Secs. Litig.*), 984 F.2d 1050, 1052 (9th Cir. 1993) (explaining that there must be a legally cognizable duty to disclose internal projections); and *Basic, Inc.*, 485 U.S. at 239 n. 17 (noting that silence, absent a duty to disclose, is not considered misleading under federal securities laws).

A forecast is generally referred to as forward-looking information, such as management projections of future economic performance. A forward-looking statement includes "statements containing projections of revenues, income, earnings per share, management's plans or objectives for future operations and predictions of future economic performance." *In re Copper Mt. Secs. Litig.*, 311 F. Supp. 2d 857, 880 (N.D. Cal. 2004). "Any statements of the assumptions underlying or relating to these types of statements fall within the meaning of forward-looking statement." *Id.* The Court finds that the specific calculation of risk linked to possible default rates of corporate bonds, *inter alia,* is not really a forecast or prediction. It does not require an appraisal of the likelihood of such defaults or the period of time within which they would occur. Thus, if it was possible to calculate and quantify historical factors and time frames and come up with a percentage rate that would cause an investor to lose his entire investment, such information would be material under *Basic.* The problem, however, is whether Defendant had a duty to disclose the precise information that Plaintiff points to in the "Percentage of Default-Rate Statement."

The SIM included a chart of the percentage of annual default rates at which an investor would profit or would break even. Any reasonable investor could extrapolate from this chart that if the annual default rate were to increase past the break even point *by even a small percentage*, a disproportionally larger percentage of the principal investment would be lost. (*See* May 2000 Supplemental Information Memorandum, attached as Ex. A to Decl. of Michael Sitrick in Opp'n to Def.'s Motion to Dismiss/ MSJ (hereinafter "SIM") at p. 38.) *See also, Miller v. Pezzani* (*In re Worlds of Worldwide Secs. Litig.*), 35 F.3d 1407, 1419 (9th Cir. 1994) (explaining that when a prospectus warned that lower net sales were expected, there was no duty to warn "the precise extent of the anticipated revenue drop"); *see also Provenz v. Miller,* 102 F.3d 1478, 1488 (9th Cir. 1996) (explaining that an issuer can reveal a projection it thinks best while withholding others, so long as the one revealed has a reasonable basis).

The SIM chart showed a steady but significant decline in return on the Class B

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

Income Notes when the annual default rate increases. For example, at a 0% annual default rate, the SIM chart calculated a 26.1% return on Class B Income Notes while at a 3% annual default rate, the return would be only 12.1%, slightly less than half of the 0% annual default rate. (*See* SIM at p. 38.) Yet, it further revealed, if the default rate were to increase just one more percentage point to a 4% annual default rate, the SIM chart estimated the return will be 1% – a drastic drop. It takes little prowess to perceive from this chart that any further increase in the default rate would equate to a significant negative return on the Class B Income Notes or, in other words, a potential loss of all the principal.

Moreover, Defendant has proffered evidence showing that there were many means available to Sitrick to calculate when he might lose his entire investment, such as the timing of defaults, cumulation of defaults, the type of collateral, investment grades, and interest rates. (*See, generally*, Feb. 15, 2006 Deposition of Timothy Beaulac, head of Defendant's collateralized debt obligation group, Ex. A to Supplemental Decl. of Mark Krum.)[17] Beaulac explained that he did not include in the SIM the specific calculation of when an investor would potentially lose his or her principal (i.e., the 8% to 9% annual default rate) because investors considered the likelihood of an 8% to 10% annual default rate continuing for several years as an aberration (i.e., the risk was too remote). (*Id.* 102:19-23.)

Here, there were approximately "fifty to one hundred scenarios, all with varying default rates at varying times during the anticipated life time of the CBO III portfolio." (Def.'s Supplemental Brief in Support of its MSJ 4:15-17, citing Joshua Siegel Dep. 33:10-18, Ex. A to March 31, 2006 Fron Decl.) Because of this, the simple calculation that Plaintiff seeks was "not possible because the value of the Class B Notes in CBO III [was] affected by numerous variables." (*Id.* at 5:2-3.) These variables included:

(1) the reality that the collateral manager could completely change the underlying portfolio at any time such that any calculation forecasting the effects of the decline

---

[17]     True, Defendant ran these scenarios for the rating agencies, but not for individual investors in the CBO III. Defendant did note in the OC, however, that it would have done so had it been asked to do so. (*Id.* at 72:11-73:12; 101:13-102-5; 117:25-118-14.)

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

of collateral on the value of the investment was only accurate for the portfolio at the time of the forecast; (2) the timing at which the underlying collateral experienced the decline; and (3) the ability of the collateral manager to recover some of the losses of the defaulting collateral by purchasing substitute collateral.

(*Id*. at 5:3-9.)  Additionally, Defendant contends that the collateral debt had not been fully purchased at the time of the OC.  (*Id.*  12:19-23.)  In short, there were too many unknowns to permit an accurate default rate on hypothetical collateral.

As in *In re Worlds of Wonder Secs. Litig.*, Defendant had no duty to disclose each individual calculation that could result in an investor losing his principal, given the plethora of changing scenarios.  *See In re Worlds of Wonder Secs. Litig.*, 35 F.3d at 1419 (toy company was "under no duty to disclose the precise extent of the anticipated revenue drop.").

Ultimately, Defendant did disclose to a reasonable extent the projected loss of return.  Defendant did not have the duty to go beyond that and disclose every facet of the calculated projections.  Its omission did not make its offering documents so incomplete as to mislead a reasonable investor.

### b. *Bespeaks Caution Doctrine*

Under the Bespeaks Caution doctrine, representations and statements in the SIM and the OC included enough cautionary language or risk disclosure to protect the Defendant against Plaintiff's securities fraud allegations as to the Percentage of Default Rate Statement.   A reasonable investor would not find the total mix of information misleading.  *See, e.g., Provenz*, 102 F.3d at 1493. The Bespeaks Caution doctrine is a reformulation of two fundamental concepts in securities fraud law: reliance and materiality.[18]  *Id.*   It provides a "mechanism by which a court can rule as a matter of law

---

[18]    Plaintiff argues the Bespeaks Caution does not apply because Plaintiff (1) is not asserting federal securities law causes of action and (2) it only applies to forward-looking statements.   This argument fails.  The Bespeaks Caution doctrine is not restricted to federal securities laws.  Rather, it is a judicially-created safe harbor providing a mechanism by which a court can rule as a matter of law on whether defendant's offering materials contained enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud.  *E.g., Employers Teamsters Local Nos. 175*

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

(typically in a motion to dismiss for failure to state a cause of action or a motion for summary judgment) that defendants' forward-looking representations contained enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud." *Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1132 (9th Cir. 2004). In fact, the Private Securities Litigation Reform Act ("PSLRA") created a statutory version of this doctrine by providing a safe harbor for forward-looking statements, identified as such, that are accompanied by meaningful cautionary statements. *Id.*

The doctrine addresses the unique nature of fraud actions based on predictive statements. *In re Worlds of Wonder Sec. Litig.*, 351 F.3d at 1414. "In essence, predictive statements are just what the name implies: predictions. As such, any optimistic projections contained in such statements are necessarily contingent." *Id.* The doctrine addresses "situations in which optimistic projections coupled with cautionary language – in particular, relevant specific facts or assumptions – affecting the reasonableness of reliance on the materiality of those projections." *Id.* The doctrine applies equally to both affirmative misrepresentations and omissions concerning soft information. *Kaufman v. Trump's Castle Funding* (*In re Donald Trump Casino Secs. Litig.*), 7 F.3d 357, 371 (3d Cir. 1993).

Cautionary statements will protect a defendant from alleged false and misleading statements if the cautionary statements are "'precise' and 'directly address[] .... the [defendants'] future projections.'" *Provens*, 102 F.3d at 1493 (quoting *In re Worlds of Worldwide Secs. Litig.*, 35 F.3d at 1414); *In re: Immune Response Secs. Litig.*, 375 F. Supp. 2d 983, 1033 (S.D. Cal. 2005). "'Blanket warnings that securities involved a high degree of risk [are] insufficient to ward against a federal securities fraud claim.'" *Provens*, 102 F.3d at 1493 (alteration in original). When analyzing the particular omitted statements, the Court must consider whether *the total mix of information* in the document or conversation is misleading, similar to the assessment of materiality. *In re Copper Mt. Secs. Litig.*, 311 F. Supp. 2d at 876 (citing *Fecht v. The Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995)).

Here, while aspects of the disclosures are boilerplate, the total mix is not

---

*&505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1131-1132 (9th Cir. 2004).

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

misleading.  In the OC and SIM, Defendant disclosed many risk factors as to what would cause the investment to fail.  For example, the cover page of the OC directed any potential investor, in bold type, to the section in the OC listing the risk factors that were to be considered in connection with investment in the Notes.  The risk factor section spanned eight pages and disclosed, *inter alia*, the following categories:  default rates of high yield corporate debt; non-recourse obligations;  subordination of the Class B Income Notes; credit and liquidity risk; limited liquidity; sale of collateral upon default on the notes; interest rate mismatch risk; certain conflicts of interest; changes in tax law; dependence on key personnel; and principal prepayments of senior notes.  (*See* OC at pp. 16-24.)[19]

Specifically,  the risk factors included that the Class B "Income Notes are subordinated to the [Class A] Senior Notes and to the payment of certain fees and expenses ... and no principal will be paid to the Holders of the Income Notes until the Senior Notes have been paid in full."  (*Id.* at p. 16.)  The same risk, attributable to the Class B Notes' subordinate status, was stated again later in the OC several times.  Thus, any reasonable investor would have been aware that payments on the Class B Income Notes would be made only after payment, fees and expenses of Class A Senior Notes.  Moreover, the OC further stated that this subordinate status could cause an investor to lose his or her principal entirely.   (*See id.* at p. 74, stating "**[t]he Income Notes represent a leveraged subordinated investment in a non-investment-grade securities, and investors in the Income Notes bear a high risk of losing all or part of their investment**") (emphasis in original).   Given this information, any reasonable investor would have been aware of the potential to lose his or her entire investment in the Class B Income Notes without being given the language proposed by Plaintiff.

In addition to disclosing the risks attributable to liquidity and leverage, the OC also disclosed that the Income Notes were highly risky and volatile because of their collateral, i.e., the underlying corporate bonds:

---

[19]     Defendant and Plaintiff submitted different versions of the Offering Circular.  This Order relies on the Offering Circular submitted by Plaintiff because it is the document, or one of the documents, Plaintiff alleges that governs the representations made to Plaintiff.  Moreover, the sections of Plaintiff's OC referenced herein are substantially similar, if not identical, to Defendant's OC.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

Future periods of uncertainty in the United States economy and the possibility of increased volatility and default rates in the high yield sector may further adversely affect the price and liquidity of high yield debt obligations. To the extent that a default occurs with respect to a Collateral Debt Security in the Trust Estate, and the Trustee at the direction of the Investment Manager sells or otherwise disposes of such Collateral Debt Security, or if the Investment Manager decides to sell a Credit Risk Security as described herein, it may be difficult or impossible to dispose of such Collateral Debt Securities in a timely manner, and it is unlikely that the proceeds will be equal to the unpaid principal and interest thereof.

(*Id.* at p. 17.) Further, under the section entitled "Default Rates of High Yield Corporate Debt," the OC warned that, "[i]n certain circumstances, it is possible that investors in one or both Classes of Notes will not recover their original investment." (*Id.* at p. 18.) The cover page of the OC also stated that while the senior Class A notes must be rated triple A (the highest investment grade rating by all rating agencies) the Class B Income Notes will not be rated. (*See* OC at p. i.) Additionally, the cover page noted that the Class B Income Notes will not benefit from the financial guarantee insurance policy applied to the Senior Class A Notes.

More importantly, Defendant specifically stated several times throughout the document that there is no reliable measure for the default rates and that the Class B Income Notes investor could lose his entire investment. (OC at p. 18, "In certain circumstances, it is possible that investors in one or both Classes of Notes will not recover their original investment.") (*See also* OC at p. 74, stating: "**The Income Notes represent a leveraged subordinated investment in non-investment-grade securities, and investors in the Income Notes bear a high risk of losing all or part of their investment**." (emphasis in original).) This last warning directly addressed the high risk faced by Class B Income Notes resulting from their subordinate status, as required under the Bespeaks Caution doctrine.

Additionally, the cover page also stated that the notes were not registered under the U.S. Securities Act of 1933 and thus a U.S. investor in the Class B Income Notes had to be an "accredited investor" as defined by Rule 501(a) of Regulation D, promulgated under the 1933 Securities Act. Moreover, the OC further stated that the Notes were being

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

offered only to a limited number of experienced and resourceful individuals and institutional investors that were:

> CAPABLE OF (A) ANALYZING AND ASSESSING THE RISKS ASSOCIATED WITH DEFAULTS, LOSSES AND RECOVERIES ON, REINVESMENT OF PROCEEDS OF AND OTHER CHARACTERISTICS OF DEBT SECURITIES SUCH AS THE COLLATERAL DEBT SECURITIES, AND (B)  BEARING SUCH RISKS AND THE FINANCIAL CONSEQUENCES THEREOF AS THEY RELATE TO AN INVESTMENT IN THE NOTES.

(*Id*. at p. ii.)[20]

The above disclosures were precise enough to inform investors that their investment, especially in Class B Income Notes, was volatile and that there was a high risk of losing principal.  When the disclosures in the OC as well as the SIM were combined with the SIM chart's projected loss return, a reasonable investor would not find the total mix of information misleading.  *See, e.g., In re: Donald J. Trump Casino Secs. Litig.*, 7 F. 3d at 364 ("We conclude that, given these warning signals in the text of the prospectus itself, the plaintiffs cannot establish that a reasonable investor would find the ... omissions material to his or her decision to invest in the Taj Mahal.").  *See also, In re Copper Mt. Secs. Litig.*, 311 F. Supp. 2d at 882 (explaining that the cautionary warning must only mention important factors of significance similar to those actually realized, rather than list *all factors* that might make the results different from those forecasted).

### c.  Duty to Disclose Historical Pattern of Default Rates Statement

---

[20]     On the next page, the OC also stated that the notes were only offered to a limited number of investors that "[were] willing and able to conduct an independent investigation of the characteristics of the notes and risks of ownership of the notes."  (OC at p. iii.)  It further stated that it is expected that each prospective investor would conduct an independent investigation of the risks but that representatives of the placement agent "[would] be available to answer questions concerning the co-issuers, the notes, and the collateral and [would], upon request, make available such other information as investors may reasonable request."  (*Id*.)

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

Defendant argues that it did not have a duty to disclose that investors could lose their investment if the historical pattern of default rates from 1989 to 1992 repeated itself *immediately* following the close of CBO III.  In the OC, Defendant stated that there was no measuring stick for performance of these Class B Income Notes:

> The Issuer is not aware of a central source for relevant data or a standardized method for measuring default rates of high yield debt securities.  Furthermore, historical performance of the high yield debt market is not necessarily indicative of the future performance of such market.  In certain circumstances, it is possible that investors in one or both Classes of Notes will not recover their original investment.  Due to the subordination provisions of the Notes . . ., the Holder of the Income Notes will be directly and immediately affected by defaults and losses on the Collateral Debt Securities. ...

(Oct. 20, 2000 Offering Circular, attached as Ex. B to Decl. of Michael Sitrick in Opp'n to Def.'s Motion to Dismiss/MSJ (hereinafter "OC")  at p. 18; *see also* SIM at p. 50, reciting most of these risk factors.)

The OC did not reference the historical pattern of corporate bond defaults from 1989 to 1992 and the Court agrees with Defendant that it did not have to.  *See, e.g., Hanon v. Dataproducts Corp.*, 976 F.2d 497, 505 (9th Cir. 1992)  (explaining that the party did not have a duty to disclose a known market condition).  The historical pattern of high yield corporate debt is a market condition of the past.   Moreover, the 1989-1992 pattern of the corporate bond market was approximately eight to eleven years prior to the OC.  As Defendant's expert said in his deposition, the 1989-1992 market was an aberration with unique factors and circumstances.  (Feb. 15, 2006 Beaulac Dep. 102:19-103:5.)  Referencing this historical pattern in the OC likely would be unreliable given (1) the regulatory and market changes throughout the decade and (2) the impossibility of being able to determine whether the exact same pattern would happen immediately after the Class B Income Notes closed.

### d.  Conclusion

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

However material the Percentage of Default Rate Statement may have been, Defendant provided enough cautionary statements warning of the pitfalls of investing in Class B Income Notes, including references to the matters addressed by the alleged omissions, as to immunize Defendant from liability under the Corporations Code, especially when the total mix of information included an accurate projected loss of return. As the Ninth Circuit Court of Appeal stated in affirming Judge Wilson, "[w]e conclude that the court did not err in finding that the alleged omissions were immaterial as a matter of law because a reasonable investor would not find that their exclusion altered the 'total mix' of information available." *Sitrick v. Wachovia Secs. Fin. Network, Inc.*, 240 Fed. Appx. 238, 239 (9th Cir. 2007).

## 2. Statute of Limitations

The state law securities causes of action are barred in any event by the statute of limitations. Here, all of the causes of action apply what is known as "inquiry notice" or the "discovery rule." *See, e.g., Platt Elec. Supply, Inc., v. EOFF Elec., Inc*., 522 F.3d 1049, 1054-55 (9th Cir. 2008) (explaining that a plaintiff is required to conduct a reasonable investigation of any alleged misconduct after becoming aware of the injury). Under this standard, the Court finds that Plaintiff was on inquiry notice as early as December 6, 2002.

### a. Legal Standard

(i) Fraud. Under California law, a three-year limitation period applies to actions for relief based on fraud or mistake. Cal. Civ. Proc. Code § 338(d). This occurs when either the plaintiff (1) discovers the facts constituting the fraud or mistake, *see id.*, or (2) "has information that would put a *reasonable person* on inquiry." *Util. Audit Co. v. City of Los Angeles*, 112 Cal. App. 4th 950, 962 (2003) (emphasis added); *see also Kline v. Turner*, 87 Cal. App. 4th 1369, 1374 (2001) ("The statute of limitations begins to run when the plaintiff has information which would put a reasonable person on inquiry.") Courts characterize this "reasonable person" standard as either "inquiry notice" or the "discovery rule."

(ii) Negligent Misrepresentation. The statute of limitations for negligent misrepresentation is only two years. *Platt Elec. Supply, Inc.,* 522 F.3d at 1054. Inquiry

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

notice also applies to a negligent misrepresentation cause of action. *Id*. at 1053-56.

(iii)  <u>Breach of Fiduciary Duty</u>.  The statute of limitations for breach of fiduciary duty is four years.  Cal. Civ. Proc. Code § 343; *Stalberg v. Western Title Ins. Co.*, 230 Cal. App. 3d 1223, 1230 (1991).  In California, inquiry notice also applies to this cause of action.  *See, e.g., Cantor Fitzgerald, Inc. v. Lutnick*, 313 F.3d 704, 710 (2d Cir. 2002) ("Both California and Nevada provide that in cases involving breaches of fiduciary duty, the statute of limitations begins to run when plaintiffs were on 'inquiry notice', that is, when they actually 'discovered or should have discovered all facts essential to [their] cause of action' through the exercise of 'reasonable diligence.'") (alteration in original).

(iv)  <u>The California Corporations Code.</u>   The statute of limitations is either the expiration of (1) five years after the act or transaction constituting the violation or (2) two years from the discovery of the facts constituting the alleged fraud, whichever shall first expire.  Cal. Corp. Code § 25506(b).  Inquiry notice also applies.  *See, e.g., Kramas v. Sec. Gas & Oil Inc.,* 672 F.2d 766, 770 (9th Cir. 1982) (finding that, under section 25506, the statute of limitations begins to run when plaintiff either discovers the facts constituting the violation or in the exercise of reasonable diligence should have discovered them).

(v)  <u>Rescission</u>.   Finally, the statute of limitations for a claim based on rescission of a contract in writing is four years.  Cal. Civ. Proc. Code § 337.  "Where the ground for rescission is fraud or mistake, the time does not begin to run until the discovery by the aggrieved party of the facts constituting the fraud or mistake." § 337 (3).  Inquiry notice or the discovery rule also applies to section 337. *See Angeles Chem. Co. v. Spencer & Jones*, 44 Cal. App. 4th 112, 119 (1996).

### b. Analysis

Normally, the question of when the plaintiff became aware or should have become aware of the facts making up the fraud is a question of fact, rendering summary judgment inappropriate. *Kramas*, 672 F.2d at 770.  However, reasonable diligence is an objective standard and when the "uncontroverted evidence irrefutably demonstrates [that the] plaintiff discovered or should have discovered the fraudulent conduct, the issue may be resolved by summary judgment." *Id.* (internal citations omitted).

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

Defendant argues that Plaintiff was on inquiry notice of all causes of action in this case when he filed the State Court Action against FMA and its collateral manager, Malamed, on December 6, 2002. (Def.'s July 25, 2005 Motion to Dismiss/MSJ 17:17-21.)  If so, any claim for relief that has a statute of limitations not more than two years would fail as a matter of law because he filed the current action in April 2005.  The causes of action alleging negligent misrepresentation and securities fraud under the California Corporations Code are such claims.

Plaintiff alleges that he did not learn that he had lost a material portion of his investment until April 2004.  (Pl.'s August 15, 2005 Decl. ¶ 6.)  Plaintiff also alleges that he did not learn until December 2005 that a default had occurred, causing him to lose his entire principal investment.   (Pl.'s Supplemental April 28, 2006 Decl.  ¶ 2.)   If true, and if actual knowledge (not inquiry notice) were the standard, no cause of action would be barred.

The Court finds that the December 2002 lawsuit that Plaintiff filed against Malamed and FMA (i.e., the State Court Action) irrefutably demonstrates that he was on notice of the alleged fraudulent omissions of Defendant Citigroup, the placement agent of CBO III.  Plaintiff's investment in CBO III, one of several investments Plaintiff referred to in the State Court Action, was made by October 2000.  For example, Plaintiff alleged that, from 1999 to 2001, Malamed falsely represented the risk inherent in investing in CBOs, thereby inducing Plaintiff to invest in such CBOs established by Malamed from 1999 through 2001.   (State Court Action, Ex. A to Def.'s July 25, 2005 RJN, ¶¶ 12, 18.)  Moreover, Plaintiff argued that he "invested, on behalf of the Sitrick Trust, substantial sums in *three CBOs* established and recommended by Mr. Malamed over the course of the ensuing year and a half."  (*Id.* ¶ 18, emphasis added.)  Here, all of the alleged fraudulent conduct and requisite injury stemmed from Plaintiff's investment in the CBOs. That the gravamen of the State Court Action was fraudulent representation, rather than fraudulent omission, makes no difference.   By December 2002, certainly, Plaintiff had sufficient facts to exercise reasonable diligence to determine whether to allege fraudulent omission against Defendant Citigroup, the placement agent for CBO III.

### c. Conclusion

The statute of limitations bars Plaintiff from alleging negligent misrepresentation

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

and the California Corporations Code securities violations, both of which have a two-year statute of limitations.  The Court GRANTS Defendant's MSJ as to these causes of action.

### 3.   <u>Reliance</u>

Defendant argues that Plaintiff's claims for (1) fraudulent omission; (2) negligent misrepresentation and (3) securities fraud under the California Corporations Code also fail because Plaintiff cannot show he relied on the offering documents in making his investments.

Both fraud and negligent misrepresentation require proof of reliance.  *See, e.g.*, *Alliance Mortgage Co. v.  Rothwell*, 10 Cal. 4th 1226, 1239 & n.4 (1995) (defining the elements of fraud and noting that "justifiable reliance and actual damages are also essential elements of negligent misrepresentation and constructive fraud").  In contrast, sections 25400 and 25401 of the California Corporations Code do not require an investor to plead or prove actual reliance.  *See, e.g., Bowden v. Robinson*, 67 Cal. App. 3d 705, 714-15 (1977).

As to only the tort causes of action, then, under California law reliance has been proven "when the representation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such representation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction."  *Alliance Mortgage Co.*, 10 Cal. 4th at 1239.  "'Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact.'"  *Id.* (quoting *Blankenheim v. E.F. Hutton & Co*., 217 Cal. App. 3d 1463, 1475 (1990)).

### a.  *The Declarations Do Not Negate Sitrick's Admission in His 2003 Deposition*

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | | Date | April 30, 2009 |
|---|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | | |

In the complaint, Plaintiff alleged that "in reliance upon the representations made in the Offering Circular, [Plaintiff] invested $5 million in the Class B Income Notes of CBO III."[21]  (Compl. ¶ 16.)  In the MSJ, however, Defendant challenges Plaintiff's ability to prove reliance on the OC because, in his deposition in the CBO II Litigation, Plaintiff admitted that he did not read or even obtain the offering materials for CBO III before he invested in the Class B Investment Notes.  (Sitrick's Aug. 26, 2003 Deposition, Ex. C of Decl. of Michelle R. Fron in Support of Def.'s Supplemental Brief in Support of the MSJ, 80:3-23.)

The "sham affidavit" doctrine provides that a party cannot create a genuine issue of fact by simply submitting an affidavit which contradicts his prior deposition testimony and which cannot be given enough credence to allow a jury to resolve whether the discrepancy is entitled to consideration.  *See Kennedy v. Allied Mut. Ins. Co.*, 952 F. 2d 262, 266 (9th Cir. 1991).  In *Kennedy*, the Ninth Circuit concluded that the application of the "sham affidavit" doctrine is limited to "'sham' testimony that *flatly contradicts* earlier testimony in an attempt to 'create' an issue of fact and avoid summary judgment."  *Id.* at 267 (emphasis added).  Moreover, if the "actions were the result of an honest discrepancy, a mistake, or the result of newly discovered evidence ... [the Court] shall entertain the [summary judgment motion] on the other grounds advanced by the parties."  *Id.*

In his 2003 deposition, Plaintiff Sitrick explicitly admitted that he did not give any offering documents for CBO III to his lawyer for review. (*Id.*)   Specifically:

Q:   Is it your testimony and recollection that that information was not contained in the offering materials you got from FMA and the sponsors?

A:   I have no idea.

Q:   Did you read the offering materials?

A:   I did not.

Q:   You got them, though.  Correct?

A:    I got them for CBO II.

---

[21]     In his complaint, Plaintiff characterized both the SIM and the OC as the offering documents for the CBO III, and collectively referred to both documents as the "OC."  (Compl. ¶ 8.)

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

> Q:   And you eventually got them for CBO III and IV. Correct?
> A.   After I made the investments.
> Q:   But you never read them?
> A:   I did not.
> Q:   Did you ask anybody else to read them?
> A:   On CBO II, I sent it to a lawyer just to find out, from legal form, whether it was consistent with a traditional document like that.  But other than that, no.
> Q:   What lawyer?
> A:   Richard Rosin, ROSIN.  Rosin and Elperin.  ELPERIN.

(*Id.*)

Plaintiff also testified that he did not speak to anyone at FMA other than Malamed regarding his decision to invest in CBO III and that he did not do any due diligence "on his own" on the CBO III investment.  (*Id.* at 49:15-50:5.)  This is what he said:

> Q:   Did you ask Mr. Malamed any questions about CBO III?
> A:   No.
> Q:   Did you do any of your due diligence on your own about CBO III?
> A.   No.

(*Id.*)

Yet, in his papers here,  Plaintiff argues that he relied on his attorney (Rosin) to review the SIM for CBO III. (Pl.'s April 28, 2006 Opp'n 24:4-8.)  To support that claim, he submitted declarations –  two of his own and one of attorney Rosin  – that, in the aggregate, contradict his deposition.  (*See* Pl.'s Aug. 15, 2005 Decl. ¶ 2; Pl.'s April 28, 2006 Supplemental Decl. ¶ 4; Aug. 15, 2005 Decl. of Richard Rosin ¶ 2.)  Consequently, Defendant urges that these declarations should be discarded as  "sham affidavits" submitted only to thwart Defendant's MSJ.

In Plaintiff's August 15, 2005 declaration submitted *two years after his deposition testimony in CBO II*, Plaintiff stated that "[i]n connection with my investment of $5 million in the fund known as 'CBO III' ... the SIM in particular was reviewed at my request by my attorney, Richard Rosin."  (Pl.'s Aug. 15, 2005 Decl. ¶ 2.)  He further explained that "I understood, based on his report back to me, that it was a standard offering document and, in particular, that the risk disclosures were boilerplate disclosures

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

of the type customarily found in such documents." *(Id.)*

In his supplemental April 28, 2006 declaration, Plaintiff attempted to fortify his August 15, 2005 declaration by providing dates that would show his indirect reliance on Rosin was timely. He stated that he "received the Supplemental Information Memorandum ('SIM') in or around May 2000 and relied on that document, which was reviewed for me by my long-time attorney, Richard Rosin, in determining to invest in CBO III." (Pl.'s April 28, 2006 Supplemental Decl. ¶ 4.) He continued: "I thereafter executed a subscription agreement on or about July 14, 2000, pursuant to which I tendered the $5 million I invested well before ever receiving the Offering Circular." *(Id.)*

Sitrick's second declaration was filed approximately eight months after Plaintiff had lost a similar motion to dismiss or, in the alternative, motion for summary judgment in his CBO II Litigation, in part because Judge Wilson found Plaintiff failed to show reliance on similar offering documents. (*See* CBO II Litigation's Aug. 25 , 2005 Order, pp. 45-51.)

For his part, Rosin's declaration (filed on the same day as Sitrick's first declaration) stated:

> At the request of Michael Sitrick, I reviewed offering materials, in connection with Mr. Sitrick's consideration of an investment in the fund known as "CBO III." In reviewing the offering materials, it appeared to me and I advised Mr. Sitrick that they appeared to be standard offering materials and, in particular, that the risk disclosures were boilerplate disclosures customarily found in such documents. I so advised Mr. Sitrick and also informed him that I too was investing in CBO III. Thereafter, I invested $500,000 in CBO III, which monies were used to purchase Class B Notes.

(Aug. 15, 2005 Decl. of Richard Rosin ¶ 2.)

Rosin's declaration did not clarify which documents he relied on. He did not specify whether it was the material included in the SIM *and* the OC, or just in the SIM (which is the only item Sitrick specifically identified). This omission becomes

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

significant when compared with Rosin's declaration in the CBO II Litigation, which tracks almost word for word his declaration here.  The main difference is that in the CBO II Litigation, Rosin's declaration specifically named the offering documents he reviewed there**:**

> At the request of Michael Sitrick, I reviewed certain documents, including a "Private Placement Memorandum" and an "Offering Memorandum" (collectively the "Offering Documents"), in connection with Mr. Sitrick's consideration of an investment in the fund known as "CBO II."  In reviewing the Offering Documents, it appeared to me that the documents were standard offering documents and, in particular, that the risk disclosures were boilerplate disclosures customarily found in such documents.  I so advised Mr. Sitrick and also informed him that I too was investing in CBO II.

*Sitrick v. Wachovia Secs. Fin. Network, Inc.*, No. CV 05-2962-SVW (CTx), August 25, 2005 Order, at p.33 n. 10 (i.e., the CBO II Litigation). In this case, he did not specify which offering documents he allegedly read.

The discrepancies between Sitrick's 2003 deposition and these declarations are stark.  Along with the failure of Rosin to specify what he read and the fact that Sitrick mentioned only the SIM, these declarations are entitled to no weight and no reasonable jury could find reliance on them, particularly when considering the factors set forth in the next section.

### b.  Reliance on SIM

Even if Plaintiff, through his lawyer, did rely on the SIM in deciding to invest in CBO III, as shown by his July 2000 subscription agreement, that reliance would not be actionable.  The May 2000 SIM stated that it was not intended to be an offering document and any investment decision with respect to the securities should be made "based solely upon all of the information contained in the final [OC]."  (*See* SIM p.2.) Further, the SIM began with a thorough disclaimer:

> Neither of the Co-Issuers nor any of their affiliates make any representation as to the accuracy or completeness of this Supplemental Information Memorandum.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|----------|------------------------|------|----------------|

| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* |
|-------|-----------------------------------------------------------|

The information herein is preliminary and will be superseded by the Confidential Offering Circular.  The Supplemental Information Memorandum addresses only certain aspects of the applicable securities' characteristics and thus does not provide a complete assessment.  As such, the Supplemental Information Memorandum may not reflect the impact of all structural characteristics of the securities.  The assumptions underlying the information herein, including structure and collateral, may be modified from time to time to reflect changed circumstances.  ... The securities may not be sold nor may an offer to buy be accepted prior to the delivery of a final Confidential Offering Circular relating to the securities. All information here is preliminary, limited in nature and subject to completion or amendment. ... Any opinion, estimate, or projection herein constitutes a judgment as of the date of this document, and there can be no assurance that future results or events will be consistent with any such opinion, estimate or projection.

(*Id.*)  Moreover, the SIM also included an appendix with a similar version of the risk factors set forth in the OC and a disclaimer at the end stating that: "This financing summary is subject to a more detailed offering memorandum, which will be available separately."  (*Id*. at p. 53.)  In short, the plain language of this document would and did advise any reasonable investor not to rely only on the information provided in the SIM.

Additionally, the October 2000 Offering Circular stated that, *except as set forth in this offering circular,* no person is authorized to give any information or make any representation not contained in this offering circular and, if given or made, such information or representation must not be relied upon.  (*See* OC p. ii.)  Thus, from the face of the Offering Documents, for Sitrick to claim sole reliance on the SIM is unreasonable.

### c.  *Failure to Investigate*

In addition, the Court agrees with Defendant that, as an accredited investor, Plaintiff failed to perform due diligence before investing in CBO III, an unregistered security. In the subscription and escrow agreement, Plaintiff represented to CBO III that he was a sophisticated and accredited investor.  (July 14, 2000 Subscription and Escrow Agreement, Ex. A to Decl. of Kenneth Malamed, ¶¶  4(i), (j), (m).)  Plaintiff

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

acknowledged and agreed that he "[had] such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of an investment in the Income Notes and [was] able to bear the economic risk of an investment in the Income Notes, including a complete loss of investment."  (*Id*. ¶ 5(c).)  He also represented that he and his advisors had a reasonable opportunity to ask questions of and receive answers from CBO III and persons acting on its behalf concerning the offering of the Income Notes and that "all such questions have been answered to the full satisfaction of [Plaintiff], unless [Plaintiff] has notified the Company otherwise."  (*Id*. ¶ 4(f).)

Despite  providing these representations to Defendant in July 2000, Sitrick admitted in his 2003 deposition testimony that the only diligence he actually conducted was to talk to Malamed.  While the OC stated all investors should conduct an independent investigation, Plaintiff did not take any steps to flag, much less resolve, the questions that he now claims to have concerning historical data and potential market effects on the default rate.  Although Sitrick stated in his deposition that he did consider the effects of an economic downturn on his investment, he never requested any additional details nor an evaluation of any proposed scenarios, which Defendant would have provided upon request, as was mentioned in the OC and by Beaulac.

In a case alleging common-law fraud, a plaintiff "cannot demonstrate reasonable reliance without making inquiry and investigation if he has the ability, through ordinary intelligence, to ferret out the reliability of the truth of the investment." *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006); *See also Starr v. Georgeson S'holder Inc.*, 412 F.3d 103, 109 (2d Cir. 2005) ("An investor may not justifiably rely on a misrepresentation if, through minimal diligence, the investor should have discovered the truth."). "'In assessing the reasonableness of a plaintiff's alleged reliance, we consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them.'" *Crigger,* 443 F.3d at 235.

Plaintiff was a sophisticated investor and he agreed to enter into this private placement with Defendant after representing that he was knowledgeable of the market and the risks of CBO III's transaction.  He had the opportunity to investigate reasonable

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

concerns but failed to do so.  His purported reliance was not reasonable.[22]

### d.  Rescission and Breach of Fiduciary Duty Causes of Action

Because Plaintiff alleged that he was entitled to rescind his investment contract based on the Defendant's alleged fraudulent omissions and negligent misrepresentations (See Compl. ¶¶ 49-54), the Court also grants summary judgment to Defendant on that cause of action because (1) Plaintiff has failed to show a genuine issue of material fact as to fraud in both common law and securities and (2) Plaintiff's negligent misrepresentation claim is barred by the statute of limitations.  *See* Cal. Civ.  Code § 1689(A)(1).

Because Plaintiff claimed that Defendants' breached their fiduciary duty by engaging in the alleged fraud and misrepresentation, the Court's summary judgment on those two causes of action also preclude him from establishing a basis to prevail on this claim.

/ / /

/ / /

---

[22]         At oral argument, Plaintiff cited a case that notes that reliance is presumed in an omission (not a misrepresentation) case if the omission is material.  *See, e.g., Zobrist v. Coal-X, Inc.*, 708 F.2d 1511, 1519 (10th Cir. 1983).  This presumption, however, is rebuttable and, in *Zobrist*, the appellate court upheld the jury's findings that the cross-appellant who argued this proposition had failed to prove reliance.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

## IV.   CONCLUSION

In accordance with the foregoing discussion, the Court hereby GRANTS Defendant's Motion for Summary Judgment on all causes of action.  Defendant shall lodge a "[Proposed] Judgment" consistent with this order, by no later than May 5, 2009.

IT IS SO ORDERED.

**THIS ORDER IS NOT INTENDED FOR PUBLICATION**.

|  | : |
|---|---|
| Initials of Preparer | SMO |

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

# EXHIBIT A

### CHRONOLOGY OF EVENTS
*Sitrick v. Citigroup Global Markets*, No. CV 05-3731-AHM (PJWx)

| Date | Event | Source[23] |
|---|---|---|
| May 2000 | Supplemental Information Memorandum on a collateralized bond offering ("CBO III"), completed and disseminated. | *Ex. A to Plaintiff Michael Sitrick's August 15, 2005 Decl.; *Ex. C to Supplemental Mark Krum's April 28, 2006 Decl. |
| Summer 2000 | Financial Management Advisors ("FMA") selected the bonds that constituted the CBO III initial portfolio during the summer of 2000. | Plaintiff's April 28, 2006 supplemental statement of genuine issues in opposition to Defendant's motion to dismiss or, in the alternative, motion for summary judgment |

---

[23]     When a source cited is the "Central District Docket," it refers to the docket for this case only, unless otherwise noted. If there are two sources or two events on the same date, the chronology separates them with asterisks.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

| | | |
|---|---|---|
| July 14, 2000 | FMA enters into a subscription and escrow agreement with Plaintiff about private placement of CBO III.  The agreement states that Plaintiff put $3.5 million in escrow for CBO III but Plaintiff claims that he invested $5 million. The agreement also allowed Plaintiff to request in writing to be released from this agreement (1) at any time prior to CBO III (the issuer) accepting the agreement and (2) at any time after the delivery of the preliminary Offering Circular but prior to the third business day prior to CBO III Closing Date in the event that the final Offering Circular contains a material change adverse to the interests of Plaintiff. | *July 14, 2000 FMA CBO Funding III, Ltd., Income Notes Subscription and Escrow Agreement, Ex. A to Decl. of Kenneth D. Malamed in support of Defendant Citigroup's July 25, 2005 motion to dismiss or, in the alternative, motion for summary judgment; * Plaintiff's April 28, 2006 Supplemental Declaration ¶ 4 |
| October 20, 2000 | Date of FMA CBO Funding III Offering Circular. | *October 20, 2000 Offering Circular, Ex. B to Decl. of Kenneth D. Malamed in support of Defendant Citigroup's July 25, 2005 motion to dismiss; *October 20, 2000 Offering Circular, Ex. B to Plaintiff Michael Sitrick's August 15, 2005 Decl.[24] |
| October 25, 2000 | *Possible close of CBO Funding III; *Letter from Standard & Poor's to the trustee of CBO III, indicating its AAA rating to the Class A Tranche notes. | *Plaintiff Michael Sitrick's April 28, 2006 Supplemental Decl. ¶ 15; *Ex. G to the April 28, 2006 Supplemental Mark Krum Decl. in opposition to Defendant's motion for summary judgment |

---

[24]     Both parties submitted a version of the offering circular.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|
| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* | | |

| | | |
|---|---|---|
| Sometime in 2001 | Plaintiff complains that payments on the CBO II investment were suspended. | Plaintiff Michael Sitrick's Aug. 15, 2005 statement of genuine issues in opposition to Defendant Citigroup's motion to dismiss |
| December 6, 2002 | Plaintiff files suit against Kenneth Malamed and FMA in Los Angeles County Superior Court, No. BC286553, *Jules Herman Sitrick, et al. v. Kenneth D. Malamed, et al.* (hereinafter, the "State Court Action"). | Ex. A to Defendant Citigroup's first request for judicial notice filed on July 25, 2005 |
| May 2003 | Plaintiff claims that he first "learned that a portion of the collateral underlying CBO III had been lost." | Plaintiff Michael Sitrick's August 15, 2005 Decl. ¶ 5 |
| August 26, 2003 | Sitrick is deposed during CBO II Litigation and he admits that he never read the offering materials for CBO III and IV, nor gave them to anybody else to read. | Plaintiff Michael Sitrick's August 26, 2003 Deposition, 80:3:15, or Ex. C of the March 31, 2006 Michele Fron Decl. in support of Defendant's motion for summary judgment |
| April 2004 | Plaintiff claims he first learned that investment in CBO III had lost a material part of its value. | Michael Sitrick's August 15, 2005 Decl. ¶ 6 |
| Sometime after April 2004 | Plaintiff claims he learned for the first time that the offering documents were misleading. | Michael Sitrick's August 15, 2005 Decl. ¶ 7 |
| May 2004 | In the State Court Action, Plaintiff and his other family members reach a settlement of more than $2 million with FMA's insurance carrier. | Ninth Circuit Opinion in *Financial Management Advisors LLC, v. American International Specialty Lines Insurance Company*, No. 06-55001, (Nov. 5, 2007) |

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|

| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* |
|---|---|

| March 2005 | Plaintiff sues Wachovia and Prudential Equity Group, et al., in a separate case in Los Angeles County Superior Court, which is removed in April 22, 2005 (see entry below) (hereinafter the "CBO II Litigation"). | Ex. B of Defendant's July 25, 2005 request for judicial notice |
|---|---|---|
| April 6, 2005 | Plaintiff files the complaint at issue in Los Angeles County Superior Court, *Sitrick v. Citigroup Global Markets*, No. CV 05-3731-AHM (PJWx) (hereinafter "CBO III Litigation"). | Ex. A of Decl. Elizabeth Logan in support of Defendant Citigroup's removal of action |
| April 22, 2005 | Prudential Equity Group removes the CBO II Litigation to Judge Stephen Wilson's chambers in the Central District of California, No. 05-2962-SVW(CTx), *Michael Sitrick v. Wachovia Securities Financial Network, Inc., et al.* | Central District Docket No.1, No. 05-2962-SVW(CTx), *Michael Sitrick v. Wachovia Securities Financial Network, Inc., et al.* |
| May 19, 2005 | Defendant removes CBO III Litigation to Judge Schiavelli's chambers. | Central District Docket No. 1, case file |
| July 25, 2005 | *Defendant files motion to dismiss *Defendant files first request for judicial notice of (1) State Court Action and (2) CBO II Litigation. | *Central District Docket No. 10, case file *Central District Docket No. 13, case file |
| August 15, 2005 | Plaintiff files opposition to motion to dismiss and objection to evidence submitted by Defendant in support of motion to dismiss. | Central District Docket Nos. 18, 16, case file |
| August 22, 2005 | Defendant files reply and evidentiary objections. | Central District Docket Nos. 20, 24-26, case file |
| August 25, 2005 | In CBO II Litigation, Judge Stephen Wilson grants Prudential Equity Group's motion to dismiss or, in alternative, summary judgment. | Central District Docket No. 36, No. 05-2962-SVW(CTx), *Michael Sitrick v. Wachovia Securities Financial Network, Inc., et al.* |

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 05-3731 AHM (PJWx) | Date | April 30, 2009 |
|---|---|---|---|

| Title | MICHAEL SITRICK v. CITIGROUP GLOBAL MARKETS, INC., *et al.* |
|---|---|

| | | |
|---|---|---|
| September 1, 2005 | Defendant files second request for judicial notice of Judge Wilson's August 25, 2005 Order granting Prudential Equity Group's motion to dismiss or, in the alternative, summary judgment in CBO II Litigation. | Central District Docket No. 29, case file |
| October 12, 2005 | Judge George P. Schiavelli issues minute order denying Defendant's motion to dismiss but granting Defendant's request to convert the matter into a motion for summary judgment. | Central District Docket No. 33, case file |
| October 24, 2005 | Defendant answers complaint. | Central District Docket No. 34, case file |
| December 14, 2005 | Plaintiff claims that prior to this date, he never received a notice of default of his CBO III Class B Income Notes. | Plaintiff Michael Sitrick's April 28, 2006 Supplemental Declaration; Ex. A or JP Morgan's notice of default |
| January 10, 2006 | Judge George P. Schiavelli has status conference, allows discovery, sets briefing schedule for motion for summary judgment. | Central District Docket No. 42, case file |
| September 19, 2007 | Defendant files a third request for judicial notice of the Ninth Circuit Court of Appeals' affirmance of Judge Stephen Wilson's August 25, 2005 order in CBO II Litigation. | Central District Docket No. 60, case file |
| October 8, 2008 | Chief Judge Alicemarie H. Stotler transfers this case to this Court. | Central District Docket No. 63, case file |
| April 8, 2009 | Court sets hearing for motion for summary judgment for April 27, 2009. | Central District Docket No. 76, case file |